UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Jacob Nocita, | Case No. 3:22-cv-5741-TLF |
| Plaintiff, | |
| v. | ORDER TO SHOW CAUSE |
| Andrea Leal, | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' Amended Complaint. Dkt. 29. In light of the recent orders from the Court dismissing several defendants from this matter, the Court conducts another screening of Plaintiffs' complaint under 28 U.S.C. 1915(e)(2).

<u>FACTUAL BACKGROUND</u>

Plaintiffs', in their complaint, describe a series of events that started in 2020 when their three minor children were taken into state custody. Dkt. 29 at 9. The Nocitas state that a police officer, Defendant David Blundered, came to their home with social workers, including Defendant Leal and Defendant De Alba. *Id.*

The Nocitas allege that Defendant Brian Dayton, a police officer with Hoquiam Police Department, pulled them over in May 2020 and informed the Nocitas that they had to keep in contact with the social workers on their children's case. Officer Dayton also allegedly testified in Court during one of the dependency hearings.

ORDER TO SHOW CAUSE - 1

Defendant Shane Krohn allegedly arrested Ms. Nocita for a violation of a no-contact order. *Id.* Defendant Christian Slater was one of the first police officers to arrive at the location where Ms. Nocita was subsequently arrested.

The Nocitas further state that Defendant Whitmire, a supervisor at Child Protective Services, allowed the social workers she supervised, including Defendants Leal, De Alba, Hollender, Mattox, and Snodgrass to "commit these crimes" against the Nocitas and their family. *Id.* at 12. With respect to Defendants Hollender and Mattox, the Nocitas claim that they violated the Nocitas' rights to "have a say" in their children's education and upbringing, and discriminated against the Nocitas on the basis of their disabilities. *Id.* at 18. The Nocitas do not state specific facts or allegations against Defendants Common or Gatlin.

The Nocitas seek an injunction by this Court that Washington return their children to their custody, in addition to $20,000 in damages.

## PROCEDURAL HISTORY

Plaintiffs initiated the instant action on October 3, 2022, when they filed applications to proceed *in forma pauperis* (IFP). Dkts. 1, 4-5. After screening their proposed complaint brought under 42 U.S.C. Section 1983, the Court issued an order to show cause informing Plaintiffs of the deficiencies in their complaint and instructed them to either show cause why this cause of action should not be dismissed or file an amended complaint. Plaintiffs filed an amended complaint on November 28, 2022. Dkt. 29. The Court subsequently granted Plaintiffs' IFP applications. Dkt. 28.

On August 14, 2023, the Court granted the State Defendants' motion to dismiss with prejudice. The State Defendants included Sandra Common, Carolyn Gatlin, De

1    Alba, Andrea Leal, Rachel Mattox, Ella Sistruck-Hollender, Page Snodgrass, and

2    Melissa Whitmire. Dkt. 75. On August 25, 2023, Defendant Jeremy Mitchell was

3    dismissed without prejudice. Dkt. 77. The remaining defendants include Shane Krohn,

4    Christian Slater, David Bludered and Brian Dayton.

5        On July 17, 2023, the Plaintiffs filed an amended complaint. Dkt. 60.

6    Defendants filed a motion to strike the amended complaint. Dkt. 63, Dkt. 66. On

7    August 30, 2023, the Court granted Defendants' motion to strike because Plaintiffs

8    failed to comply with Local Civil Rule 15. Dkt. 80.

9                                    DISCUSSION

10       Pursuant to 28 U.S.C. 1915(e)(2), "the Court shall dismiss the case at any time if

11   the court determines that ---

12       A.  The allegation of poverty is untrue; or

13       B.  The action or appeal is (i) frivolous, (ii) fails to state a claim on which relief

14           may be granted; or (iii) seeks monetary relief against a defendant who is

15           immune from relief."

16   A.  *Rooker-Feldman* Doctrine

17       Plaintiffs' claims against the remaining defendants appear to be barred by the

18   *Rooker-Feldmen* doctrine. Under the *Rooker-Feldman* doctrine, this Court lacks

19   jurisdiction to review alleged errors in state court decisions. *Exxon Mobil Corp. v. Saudi*

20   *Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005); *Rooker v. Fid. Tr. Co*., 263 U.S. 413,

21   416 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 486 (1983); 28 U.S.C. § 1257.

22   "[N]o matter how wrong a state court judgment may be under federal law, only the

23

24

25

Supreme Court of the United States has jurisdiction to review it." *Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016).

To the extent Plaintiffs' allegations against the police officers are an attempt to overturn the state's decisions in the Nocitas' children's dependency cases[1], Plaintiffs' claims would be barred under the *Rooker-Feldman* doctrine.

B. Fourth Amendment – False Arrest

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Ms. Nocita appears to state that she was falsely arrested on May 5, 2020, by Officer Krohn. To the extent Ms. Nocita seeks to bring a claim against the remaining defendants for an unlawful arrest, this would be cognizable under Section 1983 as a violation of the Fourth Amendment provided that the arrest was made without probable cause or other justification." *See Dubner v. City and Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

---

[1] The documents related to the underlying state dependency cases are attached to the AAG Miles Russell's declaration at Docket 53.

To the extent Ms. Nocita seeks damages resulting from an allegedly invalid arrest, Ms. Nocita must make a separate allegation stating such. If Ms. Nocita is only seeking the return of her minor children from state custody, however, this would still be barred under the *Rooker-Feldman* doctrine.

Similarly, if Ms. Nocita is seeking damages resulting from an allegedly invalid arrest or pretrial detention, and she has been convicted of a crime related to these actions, she must show that her conviction was reversed, expunged, declared invalid, or otherwise called into question before she can bring claims for violation of the Fourth Amendment. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Alternatively, if she seeks damages as a result of an allegedly false arrest, and she has not been convicted of any crime related to that arrest, Plaintiff must show that the allegedly false arrest has not resulted in any conviction of a crime. *See Wallace v. Kato*, 549 U.S. 384, 393 (2007) (discussing that the rule in *Heck v. Humphrey*, 512 U.S. at 486–87, does not bar a claim for damages under 42 U.S.C. §1983 where there has been no conviction).

C. Fourth Amendment – Warrantless Search

Ms. Nocita further states that the defendant police officers entered her home without a warrant and seized photographs in the house which were ultimately used as evidence in her children's dependency hearings. If Plaintiff seeks damages for the warrantless search, she must bring a separate Fourth Amendment claim.

"A warrantless search of a house is per se unreasonable, ... and absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment." *United States v. Shaibu,* 920 F.2d 1423, 1425 (9th Cir.1990) (internal citations omitted). The Ninth Circuit has held that where there has been no consent and

1   a warrant is lacking it is " 'settled constitutional law that, absent exigent circumstances,

2   police could not enter a dwelling ... even under statutory authority where probable cause

3   existed." ' *Calabretta v. Floyd,* 189 F.3d 808, 813 (9th Cir.1999), *quoting, White by*

4   *White v. Pierce County,* 797 F.2d 812, 815 (9th Cir.1986).

5          As discussed above, however, if the relief Plaintiff seeks is to have her children

6   returned to her custody, that relief would be barred under the *Rooker-Feldman* doctrine.

7          D.  Fourth Amendment – Terry Stop

8          Finally, the Nocitas state that they were stopped by Defendant Dayton while the

9   Nocitas and their children were on their way home from a lake. The Nocitas were

10  allegedly not permitted to leave until a CPS employee came to the scene and informed

11  the Nocitas that they had to keep in contact with CPS about the children.

12         An investigatory stop or encounter does not violate the Fourth Amendment if the

13  officers have "reasonable suspicion supported by articulable facts that criminal activity

14  'may be afoot.' " *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio,*

15  392 U.S. 1, 30 (1968). An investigatory stop under Terry only requires reasonable

16  suspicion, not probable cause. *See Washington v. Lambert,* 98 F.3d 1181, 1185–86

17  (9th Cir.1996).

18         If Plaintiffs are seeking damages for the allegedly unlawful stop, they must bring

19  a separate claim. If the only relief Plaintiff seeks is to have her children returned to her

20  custody, that relief would be barred under the *Rooker-Feldman* doctrine.

21                                  <u>CONCLUSION</u>

22         For the aforementioned reasons, the Nocitas are instructed to either show cause

23  why their remaining claims are not barred by the *Rooker-Feldman* doctrine or file a

24

25

ORDER TO SHOW CAUSE - 6

motion for leave to amend their complaint pursuant to Local Civil Rule 15 no later than September 15, 2023.

In light of this order, the Court also strikes the scheduling order (Dkt. 50). The Court will issue an amended scheduling order after September 15, 2023.

Dated this 30th day of August, 2023.

Theresa L. Fricke
United States Magistrate Judge

ORDER TO SHOW CAUSE - 7